UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 19-CV-10246-RGS

ADH COLLISION OF BOSTON, INC.,

v.

WYNN RESORTS, LIMITED; WYNN MA, LLC; WYNN DESIGN &
DEVELOPMENT, LLC

MEMORANDUM AND ORDER ON
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

July 6, 2020

STEARNS, D.J.

ADH Collision of Boston, Inc. (ADH) is a Massachusetts corporation
that owns and operates an automobile repair shop on leased property at 36
Mystic Street in Everett, Massachusetts. The Wynn defendants – Wynn
Resorts, Limited; Wynn MA, LLC; and Wynn Design & Development, LLC
(collectively "Wynn") – are Nevada gaming and entertainment companies
that own and operate the Encore resort and casino in Everett. The dispute
arose over Wynn's attempt to buy 36 Mystic Street from ADH's landlord,
A&R Trust, in connection with the casino development. ADH's Complaint
accuses Wynn of tortious interference with its advantageous business and
contractual relations and violations of the Massachusetts unfair or deceptive

business practices statute, Mass. Gen. Laws ch. 93A, § 11.[1]  Wynn now moves for summary judgment on both counts of the Complaint.  For the reasons that follow, the motion will be allowed.

BACKGROUND

The facts, viewed in the light most favorable to ADH as the nonmoving party, are as follows.  On November 1, 2014, ADH took possession of 36 Mystic Street under a lease granted by A&R Trust.  The initial lease expired on October 31, 2019, however ADH was given the option of extending the lease for two consecutive five-year terms.  As will be explained, ADH still occupies the leasehold and continues to operate its auto repair business undisturbed.

In fleshing out the Encore development, Wynn sought to acquire three pieces of property in Everett controlled by Rocco Vigorito, the trustee of A&R Trust, among them 36 Mystic Street.  Over the fall of 2015 and until the summer of 2016, Wynn made Vigorito increasingly lucrative offers starting at $4.9 million and culminating in a final offer of $9.75 million in June of 2016.  As would be expected, the offers were conditioned on the delivery of the premises "free and clear of all tenants and unencumbered by any existing

---

[1] Jurisdiction in this court is based on the diversity of the parties.

or future lease commitments." Compl. (Dkt # 1) at 2. At all relevant times, Wynn was aware of ADH's lease.

When Vigorito approached ADH about a buyout, after some preliminary negotiations, ADH demanded $2.2 million to vacate its premises. Vigorito declined to pay and instead, according to the Complaint, began a campaign of harassment seeking to force ADH's eviction from the property.

The campaign eventually landed in the Superior Court where ADH prevailed. Today, everyone is where they began: ADH still operates its business at 36 Mystic Street; A&R Trust still owns the property as landlord; and Wynn has no interest in the property.

The gravamen of the Complaint is distilled in ADH's allegation that "Wynn advised the Landlord to 'find [ADH Collision] in default' of the Lease rather than engage in good faith negotiations to pay for the relocation of the Plaintiff's business" and "induce[d], direct[ed], and condone[d] the Landlord's maneuvers with respect to the Lease." Compl. at 3, 4.

<u>STANDARD OF REVIEW</u>

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is only 'genuine' if there is sufficient

evidence to permit a reasonable jury to resolve the point in the nonmoving party's favor." *Petsch-Schmid v. Bos. Edison Co.*, 914 F. Supp. 697, 702 (D. Mass. 1996), citing *NASCO, Inc. v. Public Storage, Inc.*, 29 F.3d 28, 32 (1st Cir. 1994). A court evaluating a motion for summary judgment "must look at the record in the light most favorable to the party opposing the motion and must indulge all inferences favorable to that party." *Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 928 (1st Cir. 1983). Summary judgment is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

<u>DISCUSSION</u>

I.    Count I: Intentional Interference with Advantageous Business and Contractual Relations

Massachusetts courts have rarely distinguished between the tort of interference with an advantageous business relationship and its cousin, interference with contractual relations. *See United Truck Leasing Corp. v. Geltman*, 406 Mass. 811, 815 n.6 (1990); *see also Blackstone v. Cashman*, 448 Mass. 255, 259 (2007). To succeed on either claim, a plaintiff must prove that: (1) it had a contract or advantageous relationship with a third party; (2) the defendant knowingly induced the third party to break that

4

contract or relationship; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions. *Blackstone*, 448 Mass. at 260; *G.S. Enters., Inc. v. Falmouth Marine, Inc.*, 410 Mass. 262, 272 (1991); *Kurker v. Hill*, 44 Mass. App. Ct. 184, 191 (1998).

### *Knowingly Inducing Breach of Contract*

There is no dispute that a contract (the lease) existed between ADH and A&R Trust (Vigorito) and that Wynn knew it. Nor is there much of an argument that Wynn, at least indirectly, caused A&R to attempt to terminate the lease by offering ever larger sums to Vigorito to purchase the property. As a rule, "hard bargaining and lawful competition generally do not amount to impermissible interference under Massachusetts law." *Hamann v. Carpenter*, 937 F.3d 86, 90-91 (1st Cir. 2019). As the Restatement (Second) of Torts notes, "[e]ven though A knows of B's contract with C, he may nevertheless . . . solicit business in normal course. This conduct does not constitute inducement of breach of the contract." Restatement (Second) of Torts § 766 cmt. m (Am. Law Inst. 1979). Similarly, "[o]ne does not induce another to commit a breach of contract with a third person . . . when he merely enters into an agreement with the other with knowledge that the

other cannot perform both it and his contract with the third person." *Id.* at cmt. n.

It follows that Wynn's offers to buy the property from A&R, even offers that were conditioned on taking the property tenant-free, do not amount, in a legal sense, to an unlawful inducement to breach an agreement – in this case, the lease with ADH.  While existing contracts, as in the case here, "seem to receive greater solicitude" under Massachusetts law than prospective contracts, *Hamann*, 937 F.3d at 91, an economic inducement becomes actionable only when it is coupled, as in *Hamann*, with threats to cause another actual harm.  (In *Hamann*, the defendant threatened to destroy the plaintiff's business relationship with yet another third party).  Unlike in *Hamann*, however, ADH offers no evidence that the pressure from Wynn "went beyond offering . . . more money." *See Hamann*, 937 F.3d at 91.  While A&R may have, as ADH speculates, "attempt[ed] to evict Plaintiff through whatever means necessary," Opp'n to Defs.' Mot. for Summ. J. (Dkt # 27) at 8, to keep the extra money for itself, rather than take Wynn's advice and use some of it to pay ADH's relocation costs, A&R's motives, however suspect, are not attributable to Wynn.[2]

---

[2] The court rejects ADH's spoliation claim regarding allegedly missing notes kept by Wynn executive Christopher Gordon of conversations he had

*Improper Interference in Motive or Means*

To be actionable, the interference must be wrongful beyond the fact of interference itself; liability only results from improper motives or the use of improper means. *United Truck Leasing*, 406 Mass. at 816.[3] Improper conduct "may include ulterior motive (e.g., wishing to do injury) or wrongful means (e.g., deceit or economic coercion)." *Horne v. City of Bos.*, 509 F. Supp. 2d 97, 116 (D. Mass. 2007), quoting *Schwanbeck v. Federal-Mogul Corp.*, 31 Mass. App. Ct. 390, 412 (1991), *rev'd on other grounds,* 412 Mass. 703 (1992). "Massachusetts courts will find the improper motive element met when a defendant exhibits 'actual malice or a spiteful, malignant purpose, unrelated to [a] legitimate corporate interest.'" *Hamann*, 937 F.3d at 90, quoting *Tuli v. Brigham & Women's Hosp.*, 656 F.3d 33, 43 (1st Cir. 2011).

---

with Vigorito (Gordon led Wynn's land-assembly efforts). The claim is both speculative and untimely (it was made after the close of discovery).

[3] Section 767 of the Restatement (Second) of Torts sets out seven factors to consider when determining whether interference is improper. *United Truck Leasing*, 406 Mass. at 817 n.10. These factors are: (1) the nature of the actor's conduct; (2) the actor's motives; (3) the interests of the other with which the actor's conduct interferes; (4) the interests sought to be advanced by the actor; (5) The social interests in protecting the freedom of action of the actor and the contractual interests of the other; (6) The proximity or remoteness of the actor's conduct to the interference and (7) the relations between the parties. Restatement (Second) of Torts § 767.

The improper motive or means requirement enables a court to "distinguish[] truly inappropriate behavior for which there should be a remedy from normal competitive behavior permissible in the marketplace." *Pembroke Country Club, Inc. v. Regency Sav. Bank, F.S.B.*, 62 Mass. App. Ct. 34, 38 (2004). "For competition and for the rough and tumble of the world of commerce, there is tolerance, even though the fallout of that rough and tumble is damage to one of the competitors." *Melo-Tone Vending, Inc. v. Sherry, Inc.*, 39 Mass. App. Ct. 315, 319 (1995) (citations omitted). If a defendant "is not acting criminally nor with fraud or violence . . . but is endeavoring to advance some interest of his own, the fact that he is aware that he will cause interference with the plaintiff's contract may be . . . so far removed from the defendant's objective that . . . the interference may be found to be not improper." Restatement (Second) of Torts § 766 cmt. j.

When a defendant's purpose is the legitimate advancement of its own economic interest, that motive is not "improper." *See Pembroke Country Club*, 62 Mass. App. Ct. at 39. "That the plaintiff may have suffered a loss as a consequence of the defendant's pursuit of its own interest is a by-product of a competitive marketplace; it does not render the defendant's effort tortious." *Id.*; *see* Restatement (Second) of Torts § 768(1)(d) cmt. g ("If [the interfering party's] conduct is directed, at least in part, to [advancing its

competitive interest], the fact that [it] is also motivated by other impulses, as, for example, hatred or a desire for revenge is not alone sufficient to make [its] interference improper").

No evidence indicates that Wynn acted with improper motive or through improper means – only that Wynn was ardently pursuing its own economic interests.  Unlike in *Melo-Tone*, where the defendant paid to have his competitor's machines unlawfully moved and subsidized the third party's legal defense against that competitor, ADH concedes that Wynn never threatened it in any way.  *See Melo-Tone Vending*, 39 Mass. App. Ct. at 320. There is similarly no evidence that Wynn misrepresented any facts, defamed anyone, indicated an intent to harm ADH or exhibited any motive other than to benefit itself financially.  *See United Truck Leasing*, 406 Mass. at 817; *see also Skyhook Wireless, Inc. v. Google Inc.*, 86 Mass. App. Ct. 611, 622 (2014) (affirming summary judgment where there was no evidence that Google used threats, misrepresented facts, or used any other improper means).  Nor did Wynn, contrary to ADH's assertion, have any obligation to negotiate with it directly.

### Plaintiff Harmed by Defendant's Actions

A plaintiff cannot recover on a claim for tortious interference "where [it] ha[s] failed to show that [it] ha[s] suffered any pecuniary loss as a result

of the defendant's actions." *Hamann*, 937 F.3d at 93, quoting *Tech Plus, Inc. v. Ansel*, 59 Mass. App. Ct. 12, 18 (2003).   ADH has failed to establish a genuine issue of fact as to whether it suffered actual damages because of Wynn's alleged conduct.   *See Horne*, 509 F. Supp. 2d at 116 (granting summary judgment where plaintiff failed to demonstrate any economic damages caused by defendant's conduct).   ADH alleges that it suffered irreparable harm because of the loss of its business relationship with A&R and had to incur the costs of litigation that ensued as a result of A&R's attempts to terminate the lease.   These are matters, however, that arose from the failure of ADH and A&R to come to an agreement over the existing lease, not matters attributable in any legal sense to Wynn.   As to specific damages beyond litigation costs, ADH failed to adduce any evidence before discovery closed.   In fact, when asked what damages ADH was seeking to recover from Wynn, ADH's sole Rule 30(b)(6) designee Adam Haddad said, "I'll have to get back to you on that."   Def.'s Statement of Undisputed Facts (Dkt # 20) ¶ 44.   When asked how much money ADH was seeking because of the lost relationship with Vigorito, Haddad answered "I don't know."   *Id.* ¶ 45.   In the

absence of specific evidence, the claim of damages fails to rise above "speculative [or] conjectural." *G.S. Enters.*, 410 Mass at 276.[4]

II.     Count II: Violations of Massachusetts General Laws Chapter 93A

"Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a G.L. c. 93A violation is a question of law." *Moore v. La-Z-Boy, Inc.*, 639 F. Supp. 2d 136, 144 (D. Mass. 2009), quoting *R.W. Granger & Sons, Inc. v. J & S Insulation, Inc.,* 435 Mass. 66, 73 (2001) (finding no Chapter 93A violation where situation was merely "a mundane . . . loss of a business relationship to a more attractive . . . competitor").  To sustain a Chapter 93A claim, the conduct must lie "'within at least the penumbra of some common-law, statutory or other established concept of unfairness,' or rise to the level of immoral, unethical, oppressive or unscrupulous, and result in substantial injury to competitors or other business people." *James L. Miniter Ins. Agency, Inc. v. Ohio Indem. Co.*, 112 F.3d 1240, 1251 (1st Cir. 1997), quoting *Industrial Gen. Corp. v. Sequoia Pac. Sys. Corp.*, 44 F.3d 40, 43 (1st Cir. 1995).  The

---

[4] ADH sought to produce evidence of damages only in its opposition to Wynn's motion for summary judgment. Discovery closed December 23, 2019. Wynn had already filed its dispositive motion and therefore Wynn would be prejudiced by consideration of the late blooming proffer.

conduct must reach "'a level of rascality that would raise [the] eyebrow of someone inured to the rough and tumble of the world of commerce.'"  *Id.*

ADH's Chapter 93A claim is wholly derivative of its tortious interference claim.  *See* Compl. ¶ 55 ("Wynn's unfair or deceptive trade acts or practices . . . include intentionally interfering with ADH Collision's advantageous business and contractual relation with the Landlord through improper means and for its sole advantage.").  When a Chapter 93A claim is wholly derivative of the tortious interference claim, and where "the evidence [is] insufficient to establish improper motive or improper means on the part of the defendant, it is likewise insufficient to establish an unfair method of competition or an unfair or deceptive act or practice."  *Pembroke Country Club*, 62 Mass. App. Ct. at 41.  Because ADH failed to identify genuine issues of material fact regarding improper means or motive or any damages it may have suffered, the tortious interference claim fails, and the Chapter 93A claim with it.  *See FAMM Steel, Inc. v. Sovereign Bank*, 571 F.3d 93, 107-108 (1st Cir. 2009).

## ORDER

For the foregoing reasons, the motion for summary judgment is ALLOWED.  The Clerk will enter judgment for the Wynn defendants and close the case.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE